Case No. 25-60304

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

LOUISIANA PUBLIC SERVICE COMMISSION;
MISSISSIPPI PUBLIC SERVICE COMMISSION,

Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

---

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

---

**BRIEF OF PETITIONERS MISSISSIPPI PUBLIC SERVICE
COMMISSION AND LOUISIANA PUBLIC SERVICE COMMISSION**

---

William D. Booth
Orrie A. Walsvik
MICHAEL BEST & FRIEDRICH LLP
1000 Maine Avenue SW, Ste. 400
Washington, DC 20024
*Counsel for Mississippi Public Service
Commission*

Noel J. Darce
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Ste. 3150
New Orleans, LA 70112
*Counsel for Louisiana Public Service
Commission*

Case No. 25-60304

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

LOUISIANA PUBLIC SERVICE COMMISSION;
MISSISSIPPI PUBLIC SERVICE COMMISSION,

Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

---

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

## I.    Interested Persons. The following are the parties and their counsel:

| <u>Petitioner:</u> | <u>Counsel for Petitioner:</u> |
|---|---|
| Mississippi Public Service Commission | William D. Booth<br>Michael Best & Friedrich LLP<br>1000 Maine Avenue SW, Ste. 400<br>Washington, DC 20024<br>wdbooth@michaelbest.com |
| | Orrie A. Walsvik<br>Michael Best & Friedrich LLP<br>1000 Maine Avenue SW, Ste. 400<br>Washington, DC 20024<br>orrie.walsvik@michaelbest.com |
| Louisiana Public Service Commission | Noel J. Darce<br>Stone Pigman Walther Wittmann, L.L.C.<br>909 Poydras Street, Ste. 3150<br>New Orleans, LA 70112<br>ndarce@stonepigman.com |

| <u>Respondent:</u> | <u>Counsel for Respondent:</u> |
|---|---|
| Federal Energy Regulatory Commission | Hon. Robert Solomon, Solicitor<br>Federal Energy Regulatory Commission<br>888 First Street, N.E.<br>Washington, DC 20426<br>robert.solomon@ferc.gov |
| | Angela Gao<br>Federal Energy Regulatory Commission<br>888 First Street, N.E.<br>Washington, DC 20426<br>angela.gao@ferc.gov |

Federal Energy Regulatory
Commission *(cont'd)*

Debbie-Anne Reese
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, DC 20426
debbie-anne.reese@ferc.gov

**Intervenor:**

**Counsel for Intervenor:**

Midcontinent Independent System
Operator, Inc.

Madison Pitts
Midcontinent Independent System
Operator, Inc.
100 Centerview Drive
Little Rock, AR 72211
mpitts@misoenergy.org;
misolegal@misoenergy.org

**Other Interested Parties:**[1]

American Clean Power Association

Gabriel Tabak
American Counsel
American Clean Power Association
1501 M St. NW, Ste. 900
Washington, DC 20005
gtabak@cleanpower.org

Maurice L. Moss
Senior Director, Central Region
American Clean Power Association
1501 M St. NW, Ste. 900
Washington, DC 20005
mmoss@cleanpower.org

---

[1] These parties are on the official service list for the agency proceedings below but have not
intervened in the proceeding before this Court.

| | |
|---|---|
| Clean Grid Alliance | Rhonda Peters<br>InterTran Energy Consulting<br>1610 S. Valentine Way<br>Lakewood, CO 80228<br>intertranec@gmail.com |
| | Beth Soholt<br>Clean Grid Alliance<br>570 Asbury St., Ste. 201<br>Saint Paul, MN 55104<br>bsoholt@cleangridalliance.org |
| Council of the City New Orleans, Louisiana | David Shaffer<br>Dentons US LLP<br>1900 K St. NW<br>Washington, DC 20006<br>david.shaffer@dentons.com |
| | Clinton A. Vince<br>Dentons US LLP<br>1900 K St. NW<br>Washington, DC 20005-2327<br>clinton.vince@dentons.com |
| | Presley Reed, Jr., Partner<br>Dentons US LLP<br>1900 K St. NW<br>Washington, DC 20006<br>presley.reedjr@dentons.com |
| | Jennifer Morrissey, Counsel<br>Dentons US LLP<br>1900 K St. NW<br>Washington, DC 20006<br>jennifer.morrissey@dentons.com |

| | |
|---|---|
| Council of the City New Orleans, Louisiana *(cont'd)* | Maxine Chatman, Sr. Paralegal<br>Dentons US LLP<br>1900 K St. NW<br>Washington, DC 20006<br>maxine.chatman@dentons.com |
| | Joseph W. Rogers, President<br>Legend Consulting Group Limited<br>6041 S. Syracuse Way, Ste. 105<br>Greenwood Village, CO 80111<br>jrogers@legendcgl.com |
| | Byron S. Watson, Senior Consultant<br>Legend Consulting Group Limited<br>6041 S. Syracuse Way, Ste. 105<br>Greenwood Village, CO 80111<br>bwatson@legendcgl.com |
| | Erin Spears, Chief of Staff-Council<br>Utilities Regulatory Office<br>City of New Orleans<br>1300 Perdido St., Rm. 6E07<br>New Orleans, LA 70112<br>espears@nola.gov |
| Cordelio Services LLC | Alexander Kaplen<br>Troutman Pepper Locke LLP<br>401 9th St. NW, Ste. 1000<br>Washington, DC 20004<br>alexander.kaplen@troutman.com |
| | Gregory Jones<br>Paul Hastings LLP<br>2050 M Street, NW<br>Washington, DC 20036<br>gregoryjones@paulhastings.com |

Cordelio Services LLC *(cont'd)*

Sophia Faram
Paul Hastings LLP
2050 M Street, NW
Washington, DC 20036
sophiafaram@paulhastings.com

Luke Pangman, General Counsel & SVP
Cordelio Power
100 King St West, Ste. 7000
Toronto, Ontario M5X 1A9
CANADA
lpangman@cordeliopower.com

Cleco Power, LLC

Jill Kelone
Cleco Corporation
2030 Donahue Ferry Rd.
Pineville, LA 71360
Jill.Kelone@cleco.com

Trey Mayeux, Manager-MISO Policy
Cleco Power LLC
2030 Donahue Ferry Rd.
Pineville, LA 71360
Trey.Mayeux@cleco.com

Cooperative Energy

Matthew Rudolphi, Attorney
Thompson Coburn LLP
55 E. Monroe St., 37th Fl.
Chicago, IL 60603
mrudolphi@thompsoncoburn.com

Joshua E. Adrian, Attorney
Thompson Coburn LLP
1909 K St. NW, Ste. 600
Washington, DC 20006
jadrian@thompsoncoburn.com

Cooperative Energy *(cont'd)*          Nathan T. Bellville, Regulatory Affairs
                                       Specialist
                                       South Mississippi Electric Power Assoc.
                                       P.O. Box 15849
                                       Hattiesburg, MS 39404-5849
                                       nbellville@cooperativeenergy.com


Calpine Corporation                    Sarah Novosel, Senior VP & Assoc. Gen.
                                          Counsel
                                       Calpine Corporation
                                       717 Texas St., Ste. 1000
                                       Houston, TX 77002
                                       snovosel@calpine.com

                                       Rachael Marsh, VP & Managing Counsel
                                       Calpine Corporation
                                       717 Texas St., Ste. 1000
                                       Houston, TX 77002
                                       rachael.marsh@calpine.com

                                       Brett Kruse, VP Market Design
                                       Calpine Corporation
                                       717 Texas St., Ste. 1000
                                       Houston, TX 77002
                                       bkruse@calpine.com

| | |
|---|---|
| Solar Energy Industries Association | Melissa Alfano, Manager of Regulatory Affairs<br>Solar Energy Industries Association<br>1425 K St. NW, Ste. 1000<br>Washington, DC 20005<br>malfano@seia.org<br><br>David DeSalle<br>Potomac Law Group PLLC<br>1300 Pennsylvania Ave. NW, Ste. 700<br>Washington, DC 20004<br>ddesalle@potomaclaw.com |
| Vistra Corp. and Dynegy Marketing and Trade, LLC | David Ricketts, Director, MISO Market Policy<br>Vistra Corp.<br>1005 Congress Ave., Ste. 750<br>Austin, TX 78701<br>david.ricketts@vistracorp.com<br><br>Jessica H. Miller<br>Vistra Corp.<br>1005 Congress Ave., Ste. 750<br>Austin, TX 78701<br>VistraFERC@vistracorp.com |
| Pine Gate Renewables, LLC | Regan Fink<br>Pine Gate Renewables, LLC<br>130 Roberts St.<br>Asheville, NC 28801<br>rfink@pgrenewables.com |

Entergy Services, LLC,
Entergy Louisiana, LLC,
Entergy Mississippi, LLC,
Entergy New Orleans, LLC,
Entergy Arkansas, LLC, and
Entergy Texas, Inc.

Kristen Yates, Senior Counsel
Entergy Services, LLC
2107 Research Forest Dr.
The Woodlands, TX 77380
kyates1@entergy.com

Andrea J. Weinstein, Esq., VP Federal
Regulatory Affairs
Entergy Services, LLC
101 Constitution Ave. NW, Ste. 200 East
Washington, DC 20001
aweinst@entergy.com

Advanced Energy United, Inc.

Michael Haugh, Advanced Policy
Director
Advanced Energy United, Inc.
1010 Vermont Ave. NW
Washington, DC 20005
mhaugh@advancedenergyunited.org

Lisa Barrett
Advanced Energy United, Inc.
1801 Pennsylvania Ave. NW, Ste. 410
Washington, DC 20006
lbarrett@advancedenergyunited.org

Electric Power Supply Association

Bill Zuretti
Electric Power Supply Association
1401 New York Ave. NW, Ste. 950
Washington, DC 20005
bzuretti@epsa.org

| | |
|---|---|
| Constellation Energy Generation, LLC | Christopher Wilson, Director, Federal Regulatory Affairs<br>Constellation Energy Generation, LLC<br>101 Constitution Ave. NW, Ste. 400E<br>Washington, DC 20001<br>FERCe-filings1@Constellation.com |
| | John R. Orr, Jr., VP Energy Policy<br>Constellation Companies<br>1221 Lamar St., Ste. 700<br>Houston, TX 77010<br>John.OrrJr@Constellation.com |
| | Cynthia Brady<br>Constellation Energy Generation, LLC<br>100 Constellation Way, Ste. 500C<br>Baltimore, MD 21202<br>Cynthia.Brady@Constellation.com |
| Illinois Commerce Commission | Christine Ericson, Special Asst. Attorney General<br>Illinois Commerce Commission<br>160 N. LaSalle St., Ste. C-800<br>Chicago, IL 60601<br>Christine.Ericson@illinois.gov |
| | William VanderLaan<br>Illinois Commerce Commission<br>527 E. Capitol Ave.<br>Springfield, IL 62701<br>bill.vanderlaan@illinois.gov |

Upper Michigan Energy Resources Corporation, Wisconsin Electric Power Company, and Wisconsin Public Service Corporation

Conor Ward, Senior Corporate Counsel
WEC Energy Group, Inc.
231 W. Michigan St., Ste. A292
Milwaukee, WI 53203
conor.ward@wecenergygroup.com

Sarah Londo
WEC Energy Group, Inc.
231 W. Michigan St.
Milwaukee, WI 53203
sarah.londo@wecenergygroup.com

NextEra Energy Resources, LLC

Travis Contratto, Principal Attorney
NextEra Energy, Inc.
801 Pennsylvania Ave. NW, Ste. 220
Washington, DC 20004
Travis.Contratto@nee.com

Invenergy Solar Development North America LLC, Invenergy Wind Development North America LLC, and Lightsource Renewable Energy Operations, LLC

Bruce Grabow
Sheppard Mullin Richter & Hampton LLP
2099 Pennsylvania Ave. NW, Ste. 100
Washington, DC 20006-6801
bgrabow@sheppardmullin.com

American Electric Power Service Corporation

Jessica Cano, Senior Counsel
AEP Service Corporation
1 Riverside Plaza
Columbus, OH 43215
jacano@aep.com

Richard Ross, Director RTO Policy West
American Electric Power Service
Corporation
212 E. 6th St.
Tulsa, OK 74119
rross@aep.com

Adam Hickman
American Electric Power Service
Corporation
1 Riverside Plaza, Fl. 25
Columbus, OH 43215
ajhickman@aep.com

LaChon Turner
AEP Companies
801 Pennsylvania Ave. NW, Ste. 735
Washington, DC 20004
lturner@aep.com

Michigan Public Service
Commission

Nicholas Taylor, Asst. Attorney General
Dept. of Michigan Attorney General
7109 W. Saginaw Hwy.
Lansing, MI 48917
taylorn10@michigan.gov

Steven D. Hughey, Asst. Attorney
General
Dept. of Michigan Attorney General
7109 W. Saginaw Hwy., Fl. 3
Lansing, MI 48917
hugheys@michigan.gov

| | |
|---|---|
| MISO Transmission Owners | Wendy Reed<br>Wright & Talisman, P.C.<br>1200 G St. NW, Ste. 600<br>Washington, DC 20005<br>reed@wrightlaw.com |
| | Abraham Johns, Associate<br>Wright & Talisman, P.C.<br>1200 G St. NW, Ste. 600<br>Washington, DC 20005-3898<br>johns@wrightlaw.com |
| Southern Renewable Energy Association | Andrew Kowalczyk<br>Southern Renewable Energy Association<br>819 Saint Roch Ave.<br>New Orleans, LA 70117<br>andy@southernrenewable.org |
| | Whit Cox<br>Southern Renewable Energy Association<br>3612 Oakwood Rd.<br>Little Rock, AR 72202<br>whit@southernrenewable.org |
| | Simon A. Mahan<br>Southern Renewable Energy Association<br>5702 Old Hickory Rd.<br>Little Rock, AR 72204<br>simon@southernwind.org |
| Public Utility Commission of Texas | Debra Roby, Partner<br>Washington Energy Law LLP<br>900 17th St. NW, Ste. 500-A<br>Washington, DC 20006<br>droby@washingtonenergylaw.com |

| | |
|---|---|
| Public Utility Commission of Texas *(cont'd)* | Alan Robbins, Partner<br>Washington Energy Law LLP<br>900 17th St. NW, Ste. 500-A<br>Washington, DC 20006<br>arobbins@washingtonenergylaw.com<br><br>Thomas Steiger, Associate<br>Washington Energy Law LLP<br>900 17th St. NW, Ste. 500-A<br>Washington, DC 20006<br>tsteiger@washingtonenergylaw.com |
| Shell Energy North America (U.S.), L.P. | Joseph Hall<br>Eversheds Sutherland (US) LLP<br>700 6th St. NW, Ste. 700<br>Washington, DC 20001-3980<br>joehall@eversheds-sutherland.com<br><br>Kerim P. May<br>Eversheds Sutherland (US) LLP<br>700 6th St. NW, Ste. 700<br>Washington, DC 20001<br>KerimMay@eversheds-sutherland.com<br><br>Roxane E. Maywalt, Senior Counsel<br>Eversheds-Sutherland (US) LLP<br>700 6th St. NW, Ste. 700<br>Washington, DC 20001<br>RoxaneMaywalt@eversheds-sutherland.com<br><br>Matthew J. Picardi, Esq., VP<br>Shell Energy North America (US), L.P.<br>36 Pinewood Ave.<br>Saratoga Springs, NY 12866<br>Matthew.Picardi@shell.com |

| | |
|---|---|
| Shell New Energies US, LLC | Joseph Hall<br>Eversheds Sutherland (US) LLP<br>700 6th St. NW, Ste. 700<br>Washington, DC 20001-3980<br>joehall@eversheds-sutherland.com |
| Savion, LLC | Joseph Hall<br>Eversheds Sutherland (US) LLP<br>700 6th St. NW, Ste. 700<br>Washington, DC 20001-3980<br>joehall@eversheds-sutherland.com<br><br>Derek E. Sunderman, VP Transmission<br>Savion, LLC<br>422 Admiral Blvd.<br>Kansas City, MO 64106<br>dsunderman@savionenergy.com |
| Gibson City Energy Center, LLC, Shelby County Energy Center, LLC, and Tilton Energy LLC | Cliff Sikora<br>Earthrise Energy, PBLLC<br>3033 Wilson Blvd., Ste. 700<br>Arlington, VA 22201<br>cliff.sikora@earthriseenergy.com |
| Consumers Energy Company | Rachael Moore, Senior Attorney<br>Consumers Energy Company<br>One Energy Plaza<br>Jackson, MI 49201<br>rachael.moore@cmsenergy.com<br><br>Teresa Hatcher, Executive Director Engineering<br>Consumers Energy Company<br>1945 W. Parnall Rd.<br>Jackson, MI 49201<br>Teresa.Hatcher@cmsenergy.com |

| | |
|---|---|
| Alliant Energy Corporate Services, Inc. | Mary Emerson, Corporate Counsel<br>Alliant Energy Corporation<br>801 Pennsylvania Ave. NW<br>Washington, DC 20004<br>maryemerson@alliantenergy.com |
| DTE Electric Company | Mark Madden<br>DTE Electric Company<br>1 Energy Plaza, 1635 WCB<br>Detroit, MI 48226<br>mark.madden@dteenergy.com<br><br>Christopher Payne<br>DTE Electric Company<br>1 Energy Plaza<br>Detroit, MI 48226<br>christopher.payne@dteenergy.com |
| Organization of MISO States, Inc. | Brad Pope, Director of Legal and<br>Regulatory Affairs<br>Organization of MISO States, Inc.<br>811 E. Washington Ave., Ste. 400<br>Madison, WI 53703<br>brad@misostates.org<br><br>Tricia DeBleeckere, Executive Director<br>Organization of MISO States, Inc.<br>811 E. Washington Ave., Ste. 400<br>Madison, WI 53703<br>tricia@misostates.org |
| RWE Clean Energy, LLC | Paul Varnado, Asst. General Counsel<br>RWE Clean Energy, LLC<br>353 N. Clark St., 30th Fl.<br>Chicago, IL 60654<br>paul.varnado@rwe.com |

xvi

**II.    Rulings Under Review.**  The following decisions of the Federal Energy

Regulatory Commission are under review:

1.    *Midcontinent Indep. Sys. Operator, Inc.*, Order Accepting Tariff
      Revisions, 190 F.E.R.C. ¶ 61,057 (2025);

2.    *Midcontinent Indep. Sys. Operator, Inc.*, Notice of Denial of
      Rehearing by Operation of Law and Providing for further
      Consideration, 191 F.E.R.C. ¶ 62,010 (2025); and

3.    *Midcontinent Indep. Sys. Operator, Inc.*, Order Addressing Arguments
      Raised on Rehearing, 191 F.E.R.C. ¶ 61,157 (2025).

*/s/ William D. Booth*
William D. Booth
*Attorney of record for Mississippi*
*Public Service Commission*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

In accordance with Fifth Circuit Rule 28.2.3 and <u>Federal Rule of Appellate Procedure 34(a)(1)</u>, The Mississippi Public Service Commission ("MPSC") and Louisiana Public Service Commission ("LPSC"), together, the "Petitioners," submit that oral argument would be helpful to answer any technical industry questions the Court may have that Petitioners did not foresee and address in brief. If, after reviewing Respondent's and Intervenor's briefs, Petitioners believe all questions are answered and oral argument would not aid in the disposition of this case, Petitioners may ask the court to waive oral arguments.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................ xviii

TABLE OF CONTENTS ................................................................................ xix

TABLE OF AUTHORITIES ........................................................................... xxi

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUES .......................................................................3

STATEMENT OF THE CASE ...........................................................................4

I.    MISO's Generation Interconnection Queue. ....................................5

II.   MISO's Queue Cap Proposals. ..........................................................7

      A.    MISO's 2023 Queue Cap Proposal. ........................................7

      B.    MISO's Second Queue Cap Proposal. ....................................9

SUMMARY OF THE ARGUMENT .................................................................11

STANDARD OF REVIEW ............................................................................14

ARGUMENT .................................................................................................16

I.    FERC Exceeded its Authority Under the FPA by Authorizing MISO
      to Prevent Timely Interconnection of Generation for State Resource
      Adequacy. ...........................................................................................16

      A.    FERC Does Not Have Unlimited Authority to Approve MISO's
            Proposal. ..............................................................................17

      B.    FERC's Approval of the 2024 Queue Cap Proposal Departed
            from Cooperative Federalism. ..............................................20

II.   FERC Failed its Mandate to Ensure Just and Reasonable Rates by
      Approving MISO's Queue Cap Without a State Exemption. .........25

A.     Without a State Exemption, the 2024 Queue Cap Proposal does not Strike the Appropriate Balance Contrary to FERC Precedent. ...........................................................................25

B.     FERC's Failure to Consider MISO's Testimony as To The Need for State Exemptions Undermines the Just and Reasonableness of the 2024 Queue Cap. .............................................28

C.     The Approved ERAS Process Confirms Petitioners' Assertions about the Queue Cap. ...........................................................30

III.    Because MISO Failed to Distinguish the State Exemption from the Other Exemptions Proposals, the Exemptions are Unduly Discriminatory and Preferential......................................................32

IV.    CONCLUSION.............................................................35

V.    CERTIFICATE OF SERVICE....................................................36

VI.   CERTIFICATE OF COMPLIANCE ...........................................38

xx

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Atl. City Elec. Co. v. FERC*,
  295 F.3d 1 (D.C. Cir. 2002)....................................................................24

*Burlington Truck Lines v. United States*,
  371 U.S. 156 (1962)...........................................................................15

*Calumet Shreveport Refining, L.L.C. v. United States EPA*,
  86 F.4th 1121 (5th Cir. 2023) .........................................................13, 16

*Chamber of Com. v. SEC*,
  85 F.4th 760 (5th Cir. 2023) ..............................................................14

*Conn. Dep't of Pub. Util. Control v. FERC*
  569 F.3d 477 (D.C. Cir. 2009)...........................................................24

*El. Paso Elec. Co. v. FERC*,
  832 F.3d 495 (5th Cir. 2016) ..............................................................14

*Entergy Nuclear Vt. Yankee, LLC v. Shumlin*,
  733 F.3d 393 (2d Cir. 2013) ...............................................................18

*FERC v. Elec. Power Supply Ass'n*,
  577 U.S. 260 (2016)................................................................... passim

*La. Pub. Serv. Comm'n v. FERC*,
  771 F.3d 903 (5th Cir. 2014) ..............................................................14

*MCR Oil Tools, L.L.C. v. United States DOT*,
  110 F.4th 677 (5th Cir. 2024) .....................................................passim

*Mich. Consol. Gas Co. v. FPC*,
  283 F.2d 204 (D.C. Cir. 1960)...................................................15, 19, 27

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*
    *Co.*,
    463 U.S. 29 (1983) ........................................................................15

*N. Nat. Gas Co. v. State Corp. Comm'n*,
    372 U.S. 84 (1963) ........................................................................20

*Nat'l Ass'n of Regul. Util. Comm'rs v. FERC*,
    964 F.3d 1177 (D.C. Cir. 2020) ....................................................20

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev.*,
    461 U.S. 190 (1983) ......................................................................18

*Scenic Hudson Pres. Conf. v. FPC*,
    354 F.2d 608 (2d Cir. 1965) .............................................15, 19, 27

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health &*
    *Human Servs.*,
    985 F.3d 472 (5th Cir. 2021) ........................................................14

**ADMINISTRATIVE ORDERS**

*Bldg. for the Future Through Elec. Reg'l Transm'n Planning & Cost*
    *Allocation*, Order No. 1920
        187 F.E.R.C. ¶ 61,068 (2024) *order on reh'g*,
        189 F.E.R.C. ¶ 61,126 (2024), *reh'g denied*,
        190 F.E.R.C. ¶ 62,048 (2025) ..........................................12, 22, 23

*Cal. Indep. Sys. Operator Corp.*,
    116 F.E.R.C. ¶ 61,274 (Sep. 21, 2006) ........................................24

*Improvements to Generator Interconnection Procs. & Agreements*,
    Order No. 2023,
        184 FERC ¶ 61,054 (2023), *order on reh'g*,
        185 FERC ¶ 61,063 (2023), *order on reh'g*,
        186 FERC ¶ 61,199 (2024), *errata notice*,
        188 FERC ¶ 61,134 (2024) ...............................................................5

*Midcontinent Indep. Sys. Operator, Inc.*,
 186 F.E.R.C. ¶ 61,054 (2024) *order on reh'g*,
 186 F.E.R.C. ¶ 61,031 (2024)..................................................................passim

*Midcontinent Indep. Sys. Operator, Inc.*,
 190 F.E.R.C. ¶ 61,057 (2025)..................................................................passim

*Midcontinent Indep. Sys. Operator, Inc.*,
 191 F.E.R.C. ¶ 61,157 (2025)..................................................................passim

*Midcontinent Indep. Sys. Operator, Inc.*,
 192 F.E.R.C. ¶ 61,064 (2025).............................................................31

*Midcontinent Indep. Sys. Operator, Inc.*, Notice of Denial of
 Rehearing by Operation of Law and Providing for Further
 Consideration, 191 F.E.R.C. ¶ 62,010 (2025) .....................................................1

*Qualifying Facility Rates and Requirements implementation Issues
 Under the Public Utility Regulatory Policies Act of 1978*, Order
 No. 872
 85 Fed. Reg. 54,638 (2020), *order on reh'g*,
 85 Fed. Reg. 86,656 (2020) ...............................................................20

*Standardization of Generator Interconnection Agreements & Procs.*,
 Order No. 2003
 104 FERC ¶ 61,103 (2003), *order on reh'g*,
 106 FERC ¶ 61,220 (2004), *order on reh'g*,
 109 FERC ¶ 61,287 (2004), *order on reh'g*,
 111 FERC ¶ 61,401 (2005), *aff'd sub nom.*
 *Nat'l Ass'n of Regul. Util. Comm'rs v. FERC*, 475 F.3d 1277 (D.C.
 Cir. 2007) ............................................................................5

*S. Cal. Edison Co. San Diego Gas & Elec. Co.*,
 71 FERC ¶ 61,269 (June 2, 1995)..........................................................18

*Transm'n Plan. & Cost Allocation by Transm'n Owning & Operating Pub. Utils.*, Order No. 1000,
  136 FERC ¶ 61,051, at P 287 (2011), *order on reh'g*,
  139 FERC ¶ 61,132 at P 392 (2012), *order on reh'g & clarification*,
  141 FERC ¶ 61,044 (2012), *aff'd sub nom.*
  *S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014) ....................12, 23

*Wholesale Competition in Regions with Organized Elec. Markets*,
  Order No. 719, 125 FERC ¶ 61,071 at P 155 (Oct. 17, 2008), *order on reh'g*, Order No. 719-A, 128 FERC ¶ 61,059 (July 16, 2009), *order denying reh'g and clarification*, Order No. 719-B, 129 FERC ¶ 61,252 (Dec. 17, 2009) .................................................................12, 23

S̲ᴛᴀᴛᴜᴛᴇs̲

5 U.S.C. § 706(2)(A), (2)(C).........................................................................15, 19

16 U.S.C. § 824(a), (e) ............................................................................................2

16 U.S.C. § 824(b) ..................................................................................................2

16 U.S.C. § 824(b)(1)......................................................................................3, 12, 18

16 U.S.C. § 824d ............................................................................................. passim

16 U.S.C. § 824e ...................................................................................................24

16 U.S.C. § 825*l*(a) ................................................................................................3

16 U.S.C. § 825*l*(b) ..........................................................................................1, 11

Administrative Procedure Act..............................................................................14

Federal Power Act.........................................................................................passim

Public Utility Regulatory Policies Act of 1978, Pub. L. No. 95-617, 92 Stat. 3117 ............................................................................................................20

## OTHER AUTHORITIES

18 C.F.R. pt. 292 (2024) ............................................................................20

18 C.F.R. § 292.101(b)(6) (2024) ............................................................20

18 C.F.R. § 292.303-304 (2024) ..............................................................20

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to the Federal Power Act ("FPA") section 313(b). 16 U.S.C. § 825*l*(b). Petitioners instituted this proceeding by timely filing a petition for review of final Federal Energy Regulatory Commission ("FERC") orders.

The orders under review concern the latest in a series of revisions to the Midcontinent Independent System Operator, Inc. ("MISO")'s Open Access Transmission Tariff (the "Tariff") to attempt to correct its inability to timely process requests to interconnect electric power generators to its transmission network. Specifically, the underlying administrative proceeding contains three decisions by FERC; the first is an initial order accepting MISO's proposed Tariff changes, *Midcontinent Indep. Sys. Operator, Inc.*, 190 F.E.R.C. ¶ 61,057 (2025) (the "January 30 Order"), R.50. The second and third orders deny rehearing by operation of law and provide for further consideration of rehearing requests. *Midcontinent Indep. Sys. Operator, Inc.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, 191 F.E.R.C. ¶ 62,010 (2025), (the "Rehearing Denial Order"), R.54; and *Midcontinent Indep. Sys. Operator, Inc.*, Order Addressing Arguments Raised on Rehearing, 191 F.E.R.C. ¶ 61,157 (2025) (the "Further Consideration Order"), R.55.

1

MISO, a "public utility" under the FPA,[2] is required to file at FERC for approval of revisions to its Tariff under section 205 of the FPA. *See* 16 U.S.C. § 824d.

The revisions proposed by MISO modify MISO's generator interconnection study process to impose a limit, or "cap" on the number of electricity generators that can queue to interconnect to the MISO transmission network (the "queue cap" and the proposal to modify MISO's Tariff, the "2024 Queue Cap Proposal").[3] MISO's proposal included an exemption from the queue cap for certain generator interconnection requests. MISO characterized the exemptions as a separate FPA section 205 proposal.[4] Petitioners intervened[5] and protested[6] the 2024 Queue Cap Proposal, arguing in part that it was *ultra vires* to FPA Section 201(b) because the queue cap delays or prevents interconnection of electric generation resources that states designate as necessary for the adequacy of electric service. Petitioners' Protest, R.14-15, citing 16 U.S.C. § 824(b). MISO and the MPSC filed one more

---

[2] The FPA defines "public utility," as "any person who owns or operates facilities subject to the jurisdiction of [FERC]," *i.e.,* "any person who owns or operates" facilities for "the transmission of electric energy in interstate commerce." *See* 16 U.S.C. § 824(a), (e).

[3] *See* Queue Cap Proposal and Exemptions to Queue Cap Proposal to be effective 1/31/2025, R.1, together the "2024 Queue Cap Proposal".

[4] *See id.*; January 30 Order P 18. For the purposes of this brief, Petitioners refer to both the queue cap and exemptions together as the 2024 Queue Cap Proposal and the separate aspects of the 2024 Queue Cap Proposal as "queue cap" and "exemption(s)".

[5] *See* R.11, R.22.

[6] *See* R.33, ("Petitioners' Protest").

round of responsive pleadings.[7] In the January 30 Order, FERC accepted the 2024 Queue Cap Proposal as filed. January 30 Order PP 56, 86.[8] Petitioners requested rehearing.[9] FERC did not act on the rehearing request within thirty days, causing the rehearing requests to be deemed denied by operation of law. 16 U.S.C. § 825*l*(a); *see* Rehearing Denial Order, R.54. FERC issued the Further Consideration Order as provided in 16 U.S.C. § 825*l*(a). *See* Further Consideration Order, R.55. These three orders constitute final action by FERC on the 2024 Queue Cap Proposal.

## STATEMENT OF THE ISSUES

1.    Did FERC err by failing to determine that the 2024 Queue Cap Proposal, which will further delay or prevent state resource adequacy generator interconnection, is *ultra vires* to the Federal Power Act ("FPA"), 16 U.S.C. § 824(b)(1)?

2.    Did FERC violate its statutory obligation under the FPA to ensure just and reasonable rates by approving MISO's queue cap without an exemption for states to connect electric generation projects necessary for resource adequacy?'

3.    Did FERC act arbitrarily and capriciously by accepting MISO's cap exemptions despite MISO's failure to distinguish the state exemption, resulting in undue preference?

---

[7] R.48, ("MPSC Response"); R.46, ("MISO Answer").
[8] FERC also accepted the MISO Answer and the MPSC Response. January 30 Order P 26.
[9] *See* R.53, ("Petitioners' Request for Rehearing").

4.     Did FERC act arbitrarily and capriciously when it accepted MISO's queue cap without adequate consideration of all facts presented by Petitioners?

## STATEMENT OF THE CASE

Petitioners are the Mississippi Public Service Commission and the Louisiana Public Service Commission, which are the Relevant Electrical Retail Regulatory Authorities ("RERRAs") for their jurisdictions. RERRAs are the authorities through which the states regulate utility companies and are charged with ensuring sufficient electric service for customers located within their state ("resource adequacy"). This is accomplished in large part by ensuring adequate electric generation is constructed and operated to meet the customer's electricity needs ("demand"). Different types of generation have different capabilities and characteristics; they provide different qualities of service. A minimum level of generation is required to maintain resource adequacy. Over time, new generation is added, customer electric demand changes, and old generation retires. To maintain resource adequacy, RERRAs oversee through regulation the development of new generation to meet these needs ("resource plans"). To do this effectively, states, through RERRAs and their jurisdictional utilities must rely on the timely interconnection of new generation to the transmission network.

I.    **MISO's Generation Interconnection Queue.**

The U.S. transmission network is divided into sections for transmission planning purposes. Petitioners' regulated utilities are in the planning territory of the MISO, a public utility and Regional Transmission Organization ("RTO"). FERC, MISO's regulator, requires MISO to interconnect generation to the transmission networks through FERC-accepted interconnection procedures, part of MISO's Tariff. *E.g., Standardization of Generator Interconnection Agreements & Procs.*, Order No. 2003, 104 F.E.R.C. ¶ 61,103 (2003), *order on reh'g*, Order No. 2003-A, 106 F.E.R.C. ¶ 61,220 (2004), *order on reh'g*, Order No. 2003-B, 109 F.E.R.C. ¶ 61,287 (2004), *order on reh'g*, Order No. 2003-C, 111 F.E.R.C. ¶ 61,401 (2005), *aff'd sub nom. Nat'l Ass'n of Regul. Util. Comm'rs v. FERC*, <u>475 F.3d 1277</u> (D.C. Cir. 2007); *Improvements to Generator Interconnection Procs. & Agreements*, Order No. 2023, 184 F.E.R.C. ¶ 61,054 (2023), *order on reh'g*, 185 F.E.R.C. ¶ 61,063 (2023), *order on reh'g*, Order No. 2023-A, 186 F.E.R.C. ¶ 61,199 (2024), *errata notice*, 188 F.E.R.C. ¶ 61,134 (2024).

Prior to implementation of the 2024 Queue Cap Proposal, MISO's interconnection process (the Definitive Planning Phase or "DPP" process) was established in three phases to study grid interconnection requests sequentially, providing results to the initiator of the interconnection request in 355 days. January 30 Order P 5. Generators would sequentially apply to interconnect through the DPP

process. MISO would study the generator interconnection request's effect on the Transmission network and then identify necessary upgrades to the transmission network ("network upgrades") to ensure reliable delivery of the electricity generated to customers.

The network upgrade costs determined during the process, if high enough, may cause a generator to withdraw. January 30 Order P 31. Network upgrade costs are difficult to predict and often increase when a preceding generation project in the queue withdraws its interconnection request. *Id*.

Generators are permitted to cancel their interconnection requests at certain points in the process, potentially causing them to face prescribed financial penalties. January 30 Order P 5.

MISO is woefully behind schedule processing interconnection requests; approximately four years. MPSC Response, R.48:7. MISO has failed to timely produce DPP study results for interconnection customers, creating a large queue backlog. *Id*. The growing backlog and unpredictability of the MISO queue is in part due to speculation by some generation developers. Some developers hold multiple queue positions gambling that some network locations and upgrade costs will be lower than others and that they can claim state and federal incentives for generation development. January 30 Order P 16.  They then withdraw from some queue positions if costs are high, causing a domino effect requiring the study process to be

repeated. Petitioners' Protest, R.33:10. Queue speculation combined with MISO's inability to timely study the interconnection requests delay projects necessary for resource adequacy, *e.g.,* projects included in state-accepted, utility-specific resource plans that are subject to MISO's ever-growing queue backlog. January 30 Order PP 28-32.

## II.    MISO's Queue Cap Proposals.

Large investments in wind and solar generation, bolstered by federal financial support, in parallel with the retirement of dispatchable thermal generation and the forecasted interconnection of large data center loads, are reducing the generation surplus in MISO potentially leading to insufficient resource adequacy. January 30 Order P 15. MISO filed two successive proposals to fix its queue delays. The first was filed in 2023, which FERC rejected on January 19, 2024 (the "2023 Queue Cap Proposal"). January 30 Order P 6; *see also Midcontinent Indep. Sys. Operator, Inc.*, 186 F.E.R.C. ¶ 61,054 (2024) *order on reh'g*, 186 F.E.R.C. ¶ 61,031 (2024). ("Order Denying 2023 Queue Cap Proposal"). The second was filed November 21, 2024, which FERC accepted. January 30 Order P 1. FERC's acceptance of the second queue cap proposal is challenged here.

### A.    MISO's 2023 Queue Cap Proposal.

MISO's first proposal employed a cap to limit speculative projects. To distinguish speculative projects from those needed for resource adequacy, MISO

proposed to exempt from the cap projects identified by states as necessary for resource adequacy (the state exemption). January 30 Order P 8. Petitioners supported the 2023 Queue Cap Proposal because of the state exemption. State exemptions were included because the associated generation projects were unlikely to be speculative; they were considered by states as needed in the queue cycle to fulfill state resource adequacy needs. Order Denying 2023 Queue Cap Proposal, 186 F.E.R.C. ¶ 61,054 at PP109-10, 179.

On January 19, 2024, FERC rejected the first filing because MISO did not adequately support the queue cap and state exemption proposal. *See* Order Denying 2023 Queue Cap Proposal, 186 F.E.R.C. ¶ 61,054 at PP 172-74. First, FERC found that any exemption, including a state exemption, without a limit, would undermine the reason for imposing a cap by diminishing queue size reductions. *Id.*

Second, FERC concluded that MISO did not demonstrate that its proposal was not unduly discriminatory and would not create priority interconnection access for exempted interconnection requests. Order Denying 2023 Queue Cap Proposal, 186 F.E.R.C. ¶ 61,054 at P 176. FERC was concerned with the 2023 Queue Cap Proposal's potential to harm resource adequacy, and adopted the following sentiments of two commentors:

> [I]t is critically important that any cap be calculated in a way that strikes an appropriate balance between limiting the volume of requests to a level that can be processed efficiently and avoiding unnecessary

barriers to entry that will delay the development of the generation
capacity needed to meet growing supply shortages within the MISO
region.

Order Denying 2023 Queue Cap Proposal, 186 F.E.R.C. ¶ 61,054 at P 182.

### B.    MISO's Second Queue Cap Proposal.

Facing mounting pressure to fix its queue, on November 21, 2024, MISO filed

a variation of its earlier proposal with certain exemptions but unilaterally decided at

the last minute to exclude the state exemption. MISO characterized the proposal as

two separate proposals: one imposing a queue cap and one proposing exemptions to

that queue cap, so FERC could have the option to approve the queue cap but reject

exemptions. January 30 Order P 18; *see also* 2024 Queue Cap Proposal, R.1:1. The

proposed cap was an amount of capacity equal to fifty percent of the maximum

amount of electric usage for each region subject to the DPP queue studies. January

30 Order P 33. It included proposed exemptions for other purposes, but not the state

exemption. January 30 Order P 71. Despite its prior assertions as to the necessity of

the state exemption,[10] the several months of stakeholder discussions discussing its

design, and coordination with states, including having accepted an actual exemption

proposal from the states, MISO changed course, deciding it would be easier to file

without the state exemption. The second filing offered no explanation for MISO's

---

[10] *See* Order Denying 2023 Queue Cap Proposal, 186 F.E.R.C. ¶ 61,054 at P 110; *see also*
Petitioners' Protest, R.33:11-12.

failure to include the state exemption. 2024 Queue Cap Proposal, R.1:12. Rather than respond to the criticisms in FERC's prior order with support for the state exemption, MISO offered an inferior, undeveloped proposal to create a parallel expedited process for projects needed for resource adequacy – the Expedited Resource Adequacy Study ("ERAS"). As Petitioners explained, the ERAS proposal was not an adequate substitute because it would terminate (Aug. 31, 2027) and was limited to only sixty-eight projects throughout MISO's footprint, whereas the queue cap has no designated end date; it will be in place until MISO files at FERC to revise it. January 30 Order P 37.

Petitioners protested the second filing on the grounds that the 2024 Queue Cap Proposal, lacking a state exemption, is unlawful for three reasons. First, the 2024 Queue Cap Proposal was *ultra vires* to the FPA because it could deny states' ability to timely interconnect generation necessary for resource adequacy from the queue and overstepped the principles of cooperative federalism. Petitioners' Protest R.33:14-15. Second, MISO failed to demonstrate that 2024 Queue Cap Proposal was just, reasonable, and not unduly preferential because of the harm it would have on state's resource adequacy. Petitioners' Protest R.33:13-14. Third, the 2024 Queue Cap Proposal contained statements from MISO and MISO's witness, Andrew Witmeier, who filed testimony in both queue cap proceedings, that were contradictory to statements made in support of the first filing. Petitioners' Protest,

R.33:11-12. MISO answered Petitioners' Protest, and the MPSC responded by further identifying inconsistencies in the 2024 Queue Cap Proposal.[11] On January 30, 2024, FERC accepted MISO's queue cap proposal as filed. Petitioners filed for rehearing at FERC. FERC issued the Further Consideration Order addressing arguments made by Petitioners in their rehearing request, thus potentially preventing states from timely addressing their resource adequacy needs in the existing MISO DPP generator interconnection process. Petitioners brought this petition for review pursuant to 16 U.S.C. § 825*l*(b).

## SUMMARY OF THE ARGUMENT

The approval of the 2024 Queue Cap Proposal, without an exemption for resources that states need for resource adequacy, oversteps FERC's jurisdictional authority and breaks with the principles of cooperative federalism embedded in electric regulation. The 2024 Queue Cap Proposal, which prevents interconnection of resources in a time-limited queue cycle after a certain megawatt threshold is met, prevents timely interconnection of resources designated as necessary by states. The effect of this proposal is to erode state's ability to effectuate decisions about the timing and selection of generation necessary to serve load. The 2024 Queue Cap Proposal targets an area of regulation left to the states without providing an avenue

---

[11] FERC accepted the MPSC Response. January 30 Order P 26.

that recognizes the states' authority in that area. Petitioners raised this argument below and provided four examples where a reviewing court or FERC recognized the need for cooperative federalism. *See* Petitioners' Request for Rehearing, R. 53:8-11, citing *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260 (2016); *Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities*, Order No. 1000, F.E.R.C. Stats. & Regs. ¶ 31,323, at P 287 (2011), *order on reh'g*, Order No. 1000-A, 139 F.E.R.C. ¶ 61,132 (2012), *order on reh'g and clarification*, Order No. 1000-B, 141 F.E.R.C. ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014); *Wholesale Competition in Regions with Organized Elec. Markets*, Order No. 719, 125 F.E.R.C. ¶ 61,071 at P 155 (2008), *order on reh'g*, Order No. 719-A, 128 F.E.R.C. ¶ 61,059 (2009), *order denying reh'g and clarification*, Order No. 719-B, 129 F.E.R.C. ¶ 61,252 (2009); *Bldg. for the Future Through Elec. Reg'l Transmission Planning & Cost Allocation*, Order No. 1920, 187 F.E.R.C. ¶ 61,068 (2024) *order on reh'g*, Order No. 1920-A, 189 F.E.R.C. ¶ 61,126 (2024) , *reh'g denied* 190 F.E.R.C. ¶ 62,048 (2025). FERC's decision to approve the 2024 Queue Cap Proposal without considering that precedent was arbitrary and exceeded FERC's authority. The erosion harms a state's right to meet their resource adequacy needs with generation resources that the FPA gives them exclusive authority to plan, regulate, and site. *See* 16 U.S.C. § 824(b)(1).

In any case, FERC's decision to accept the queue cap without a state exemption, considering the negative effects the Cap will have on states' abilities to ensure resource adequacy, is not just and reasonable. *See* 16 U.S.C. § 824d(a) (requiring all rates and charges in connection with the sale or transmission of electricity subject to FERC's jurisdiction to be just and reasonable). FERC had evidence that MISO offered in the first queue cap proposal that a state exemption was required to make a queue cap just and reasonable. FERC accepted several other exceptions to the queue cap allegedly because they are more certain to be built and not as speculative as other requests. But FERC failed to recognize that generation projects approved by a state for resource adequacy are the least speculative of all projects.

FERC's decision to approve the queue cap, while ignoring information presented by Petitioners, was arbitrary and capacious. *See MCR Oil Tools, L.L.C. v. United States DOT*, 110 F.4th 677, 686 (5th Cir. 2024) (Agency action that is "premised on reasoning that fails to account for relevant factors or evinces a clear error of judgment" must be set aside as arbitrary and capricious.") (quoting *Calumet Shreveport Refining, L.L.C. v. United States EPA*, 86 F.4th 1121, 1133 (5th Cir. 2023)).[12] Findings of fact are "not the product of reasoned decision making," if they

---

[12] *Calumet Shreveport Refining, L.L.C. v. United States EPA*, 86 F.4th 1121, 1133 (5th Cir. 2023) was vacated, however, the sentiment in question was not overturned and originates from

are (1) inadequately substantiated and (2) run counter to the record evidence. *Id.* at 697 (quoting *Chamber of Com. V. SEC*, 85 F.4th 760, 779 (5th Cir. 2023)). Petitioners explained the contradictions in MISO Witness Andrew Witmeier's testimony. He testified in the first queue cap proceeding that a state exemption was necessary for the 2023 Queue Cap Proposal to be just and reasonable. Petitioners' Protest, R.33:11-12. Instead of substantively addressing this inconsistency, FERC simply held that Witness Witmeier's testimony is not dispositive on review of the entire record. Rehearing Order P 35. FERC also did not adequately address Petitioner's assertions that the 2024 Queue Cap Proposal would harm states' ability to address resource adequacy. Instead, FERC asserted without support that *MISO*'s resource adequacy needs were not likely to be harmed. January 30 Order PP 60-61. MISO is not the entity responsible for ensuring resource adequacy—states are. FERC should have conditioned acceptance of the filing on the inclusion of a state exemption or denied the filing outright.

## **STANDARD OF REVIEW**

Courts review FERC's orders under the Administrative Procedure Act ("APA"). *See El. Paso Elec. Co. v. FERC*, 832 F.3d 495, 503 (5th Cir. 2016) (citing *La. Pub. Serv. Comm'n v. FERC*, 771 F.3d 903, 909 (5th Cir. 2014)). Under the

---

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Human Servs.*, 985 F.3d 472 (5th Cir. 2021).

APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (2)(C). FERC acts arbitrarily when it fails to articulate "a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  FERC has an "affirmative duty to inquire into and consider all relevant facts." *Scenic Hudson Pres. Conf. v. FPC*, 354 F.2d 608, 620 (2d Cir. 1965) (citing *Mich. Consol. Gas Co. v. FPC*, 283 F.2d 204, 224, 226 (D.C. Cir. 1960). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs.*, 463 U.S. at 43. "Agency action that is 'premised on reasoning that fails to account for relevant factors or evinces a clear error of judgment' must be set aside

as arbitrary and capricious." *MCR Oil Tools*, <u>110 F.4th at 686</u> (quoting *Calumet*, <u>86 F.4th at 1133</u>).[13]

## ARGUMENT

I.    **FERC Exceeded its Authority Under the FPA by Authorizing MISO to Prevent Timely Interconnection of Generation for State Resource Adequacy.**

The queue cap, absent an exemption for states, is *ultra vires* to the FPA. The dispute in question focuses on a tension between FERC's authority to regulate the rates, terms and conditions of interstate transmission service and interconnection services, and the states' authority to ensure resource adequacy. Petitioners do not dispute the need for reforms that expedite the generator interconnection study process.  However, this queue cap cuts the study opportunities in half, thereby severely limiting the opportunities for generation projects needed to support state determined resource adequacy needs, and it interferes with the states' abilities to carry out their resource adequacy obligations. This effect of the cap on states' ability to timely interconnect generators necessary for resource adequacy itself is what exceeds FERC's authority. The state exemption would resolve this issue.

This dispute is not *per se* about whether the presence of any FERC-authorized cap over MISO's interconnection queue impermissibly treads on state authority. As MISO previously argued, and Petitioners agreed in the 2023 Queue Cap Proposal,

---

[13] *See supra* n. 13.

there are ways to cap the interconnection queue so that state resource adequacy jurisdiction is protected. *Midcontinent Indep. Sys. Operator, Inc.*, 186 F.E.R.C. ¶ 61,054 (2024) at P 10. Instead, this dispute is about how the 2024 Queue Cap Proposal, which provides *no* certain way for states to timely interconnect resources to the grid, oversteps FERC's authority by targeting the state's abilities to effectively plan their resource mix.

### A.    FERC Does Not Have Unlimited Authority to Approve MISO's Proposal.

FERC's response to Petitioners' argument is unavailing because it does not adequately address the jurisdictional dispute. Instead, FERC focuses on the language of FPA section 205 in isolation, without reference to other applicable law. First, FERC steps through the generator interconnection process. RTOs like MISO have tariffs on file with FERC including generation interconnection procedures, and if an RTO wants to modify those procedures the RTO must file at its regulator, FERC, as MISO did. Further Consideration Order P 55; *see also* January 30 Order P 92.[14] But then FERC concludes that "[t]he Commission therefore properly evaluated MISO's proposed changes to its interconnection procedures under its FPA section 205 authority." Further Consideration Order P 25. That MISO is required under FPA

---

[14] FERC incorrectly limited Petitioners' arguments to the "Exceptions" portion of the January 30 Order and only applied the logic in the Further Consideration Order; however, we include it here for completeness.

section 205 to file at FERC for a rate change does not support the Commission's assertion that it "properly evaluated" MISO's proposed changes.

FERC's authority to approve MISO's proposals is limited to proposals that fall within FERC's jurisdiction. For example, if MISO were to file a FPA section 205 proposal banning a state from interconnecting new fossil fuel generation, such a change would be outside FERC's authority under FPA section 201(b)(1). 16 U.S.C. § 824(b)(1) "The Commission…shall not have jurisdiction…over facilities used for the generation of electric energy."[15] MISO's obligation to file its generator interconnection procedures at FERC does not expand FERC's authority beyond its jurisdictional bounds. Resource adequacy falls within the jurisdiction of the states, not FERC.

FERC appeared to recognize its limitations when avoiding jurisdictional challenges. FERC declined to condition acceptance of the 2024 Queue Cap Proposal on the inclusion of a proposal like the state exemption because "[s]uch proposals are not before the Commission in this FPA section 205 proceeding." January 30 Order

---

[15] *See also Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 417 (2d Cir. 2013) (quoting *S. Cal. Edison Co. San Diego Gas & Elec. Co.*, 71 F.E.R.C. ¶ 61,269, at 62,080 (1995) ("[S]tates have broad powers under state law to direct the planning and resource decisions of utilities under their jurisdiction. States may, for example, order utilities to build renewable generators themselves, or…order utilities to purchase renewable generation."); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev.*, 461 U.S. 190, 212 (1983) (Recognizing that states retain traditional authority over capacity needs, generator type, licensing, land use, ratemaking, and the like.).

P 91. FERC must consider arguments regarding its jurisdiction, or else it would be acting arbitrarily. 5 U.S.C. § 706(2)(A), (2)(C); *Scenic Hudson Pres. Conf.*, 354 F.2d at 620 (citing *Mich. Consol. Gas Co.*, 283 F.2d at 224, 226). Petitioners argued that without a state exemption, the proposal was not just and reasonable; if FERC was concerned about authority to condition acceptance of the 2024 Queue Cap Proposal on a state exemption, the correct action was denial of the entire proposal, not approval.

In the Further Consideration Order, FERC agrees that "states retain primary responsibility 'over facilities used for the generation of electric energy.'" Further Consideration Order P 26, citing 16 U.S.C. § 824d. FERC then states that "MISO's generator interconnection procedures, **and any Commission action accepting changes thereto**, will necessarily have some impact on which generating facilities are included in the queue and how they are studied." Further Consideration Order P 26, (emphasis added). This assertion of boundless authority over any proposal brought forward by MISO regarding generation interconnection is arbitrary and not consistent with FERC's authority. Courts, FERC, and states manage this jurisdictional overlap through Cooperative Federalism. *See* Petitioners' Rehearing Request R.52:6-11.

19

### B. FERC's Approval of the 2024 Queue Cap Proposal Departed from Cooperative Federalism.

Because the intertwined nature of the electric system in the U.S. inevitably leads to jurisdictional gaps and overlaps, courts (and FERC) have historically recognized that a balance must be maintained between FERC jurisdiction and state authority. There are some firm jurisdictional boundaries[16]— and there are porous boundaries.[17] One such firm boundary is that FERC cannot prohibit the development of generation or distribution facilities. *Nat'l Ass'n of Regul. Util. Comm'rs v. FERC,* 964 F.3d 1177, 1187–88 (D.C. Cir. 2020). In *EPSA,* the U.S. Supreme Court addressed the balance between federal jurisdiction over wholesale markets and state jurisdiction over demand response. In that instance it was FERC that argued the importance of respecting state authority when exercising federal authority, in that case, the right of a state to veto participation in an RTO-sponsored demand response

---

[16] For example, a state cannot "set" a wholesale rate, and FERC likewise cannot set a retail rate. *Nat'l Ass'n of Regul. Util. Comm'rs v. FERC (NARUC),* 964 F.3d 1177, 1187–88 (D.C. Cir. 2020) *see also FERC v. Elec. Power Supply Ass'n,* 577 U.S. 260, 279 (2016) (citations omitted); FERC is not allowed to "aim at" or "target" matters that Congress reserved to the states. *NARUC,* 964 F.3d at 1187–88 (citing *N. Nat. Gas Co. v. State Corp. Comm'n,* 372 U.S. 84 (1963)).

[17] Consider, for example, the requirement for utilities to purchase power from "Qualifying Facilities" at the utility's incremental, or "avoided cost" of other electric generation under the Public Utility Regulatory Policies Act of 1978 ("PURPA"), Pub. L. No. 95-617, 92 Stat. 3117. Under PURPA, FERC defines what constitutes a Qualifying Facility and sets guidelines for how to determine avoided costs. *See* 18 C.F.R. pt. 292 (2024); *Qualifying Facility Rates and Requirements implementation Issues Under the Public Utility Regulatory Policies Act of 1978,* Order No. 872, 85 Fed. Reg. 54,638 (Sept. 2, 2020) ("Order 872"); *order on reh'g, Qualifying Facility Rates and Requirements Implementation Issues Under the Public Utility Regulatory Policies Act of 1978,* Order No. 872-A, 85 Fed. Reg. 86,656 (Dec. 30, 2020) ("Order 872-A"). States, however, set the avoided cost rates and are the venue of first review for disputes. *See* 18 C.F.R. §§ 292.101(b)(6), 292.303-304; Order 872.

program. Brief for the Pet'r at 40-42, *FERC v. Elec. Power Supply Ass'n*, <u>577 U.S. 260</u> (2016) (No. 14-840).

The Court agreed.

> [T]he finishing blow to both of EPSA's arguments comes from FERC's notable solicitude toward the States. As explained earlier, the Rule allows any State regulator to prohibit its consumers from making demand response bids in the wholesale market. Although claiming the ability to negate such state decisions, **the Commission chose not to do so in recognition of the linkage between wholesale and retail markets and the States' role in overseeing retail sales.** The veto power thus granted to the States belies EPSA's view that FERC aimed to "obliterate[ ]" their regulatory authority or "override" their pricing policies. And that veto gives States the means to block whatever "effective" increases in retail rates demand response programs might be thought to produce. Wholesale demand response as implemented in the Rule is a program of cooperative federalism, in which the States retain the last word. That feature of the Rule removes any conceivable doubt as to its compliance with § 824(b)'s allocation of federal and state authority.

*EPSA*, <u>577 U.S. at 287-88</u> (emphasis added).

FERC mistakes the 2024 Queue Cap Proposal as having only an "incidental" effect on state resource adequacy authority. *See* Further Consideration Order P 26 (citing <u>16 U.S.C. § 824d</u>); *EPSA*, <u>577 U.S. at 281-82</u>. Rather, there is clear direct "linkage" between a queue cap without a state exemption on MISO's generator interconnection queue and the state's authority to address resource adequacy. The 2024 Queue Cap Proposal does not just set the terms and conditions for interconnection of state resource adequacy generators, it erects arbitrary and

unnecessary barriers to their timely interconnection. *See* Petitioners' Protest, R.33; Order Denying 2023 Queue Cap Proposal, 186 F.E.R.C. ¶ 61,054 at P 182. States, working with their regulated utilities, determine not only the fuel type, size and location of generators needed for resource adequacy, but also the deadline by which these generators must be operational and interconnected to the Transmission grid. MISO's failure to include a state exemption subjects these projects to one or more delays causing resource inadequacy.

FERC's claim that the Supreme Court did not "rely" on the state's veto to uphold the FERC order in question is misplaced. FERC's two citations, to *EPSA* and FERC Order 1920-B, do not support FERC's contention. Further Consideration Order P 27, citing *EPSA*, 577 U.S. at 287-88; Order No. 1920-B, 191 F.E.R.C. ¶ 61,026 at P 91 (citations omitted). FERC says "Instead, the Court described the veto as a 'finishing blow . . . [that] removes any conceivable doubt as to [the order's] compliance with [FPA section 201(b)]'s allocation of federal and state authority.'" Further Reconsideration Order P 27. A finishing blow, by definition, is the necessary precursor to the "finish." FERC's interpretation of *EPSA* is not true to the text of the decision, whether FERC's justification for not including a state veto in Order 1920-B was correct or not. FERC has supplied states in a transmission-planning region (like MISO) with the ability to override RTO transmission cost-allocation proposals and other consultation requirements in recognition of the interplay between

22

transmission cost allocation and state authority. *See Bldg. for the Future Through Elec., Reg'l Transmission Planning & Cost Allocation*, Order No. 1920-B, 191 F.E.R.C. ¶ 61,026, at P 68 (Apr. 11, 2024) *order on reh'g*, Order No. 1920-A, 189 F.E.R.C. ¶ 61,126 (Nov. 21, 2024), *reh'g denied* 190 F.E.R.C. ¶ 62,048 (Jan. 23, 2025), citing *Bldg. for the Future Through Elec., Reg'l Transmission Planning & Cost Allocation*, Order No. 1920-A, 189 F.E.R.C. ¶ 61,126 at P 659.  FERC failed to recognize the need for such an alternative here.

While FERC noted that Petitioners identified two other landmark orders (Order No. 719 and Order No. 1000) where FERC provided states with a veto in consideration of the "linkage" between FERC's authority in state's authority, FERC did not address either Order in its determination. *See* Further Consideration Order at P 23, citing Petitioners' Rehearing Request, R.48:8-9. Assuming that FERC is right and that the "final blow" of the state veto in *EPSA* was just icing on the cake, FERC nevertheless acted arbitrarily by not considering the state authority granted in Order No. 719 or Order No. 1000. *See Wholesale Competition in Regions with Organized Elec. Mkts.*, Order No. 719, 125 F.E.R.C. ¶ 61,071, at P 155 (Oct. 17, 2008), *order on reh'g*, Order No. 719-A, 128 F.E.R.C. ¶ 61,059 (July 16, 2009), *order on reh'g*, Order No. 719-B, 129 F.E.R.C. ¶ 61,252 (Dec. 17, 2009); *Transmission Plan. & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 F.E.R.C. ¶ 61,051, at P 287 (July 21, 2011), *order on reh'g*, Order No. 1000-A,

139 F.E.R.C. ¶ 61,132 at P 392 (May 17, 2012), *order on reh'g & clarification*, Order No. 1000-B, 141 F.E.R.C. ¶ 61,044 (Oct. 18, 2012), *aff'd sub nom. S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014).

Finally, FERC attempts to claim its own authority to "consider" resource adequacy requirements by citing a FPA section 206 case from the United States Court of Appeals for the D.C. Circuit, *Connecticut Department of Public Utility Control v. FERC*, for the proposition that FERC can "consider" resource adequacy when determining whether a rate is just and reasonable in a FERC section 206 proceeding. Further Consideration Order P 28, citing *Conn. Dep't of Pub. Util. Control v. FERC* 569 F.3d 477, 483 (D.C. Cir. 2009); *Cal. Indep. Sys. Operator Corp.*, 116 F.E.R.C. ¶ 61,274, at P 1113 (Sep. 21, 2006); *see also* 16 U.S.C. § 824e. But in a FPA 206 proceeding, FERC has broader remedial authority to examine any aspect of an existing rate or term than in a FPA 205 proceeding. Under section 206 of the FPA, FERC is empowered to investigate and modify existing rates if they are found to be unjust, unreasonable, unduly discriminatory, or preferential, including authority to impose a replacement rate and order refunds. *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 9 (D.C. Cir. 2002). But FERC cannot undermine a state's obligation to ensure resource adequacy when accepting a rate proposal, as it has here.

Here, FERC should have struck a balance by affording states a state exemption or providing some other equivalent consideration to state authority over

resource adequacy; particularly where FERC's decision to approve MISO's queue cap is *ultra vires* to the FPA.

## II.     FERC Failed its Mandate to Ensure Just and Reasonable Rates by Approving MISO's Queue Cap Without a State Exemption.

MISO proposed a queue cap because its interconnection queue growth is unprecedented. Large investments in wind and solar generation, bolstered by federal support, in parallel with the retirement of dispatchable thermal generation and significant demand growth (data centers) are reducing the surplus of generation and eventually lead to resource adequacy challenges. Queue Cap Proposal and Exemptions to Queue Cap Proposal to be effective 1/31/2025, R.1:3. It follows that, for a queue cap to be just and reasonable, it must be "calculated in a way that strikes an appropriate balance between limiting the volume of requests to a level that can be processed efficiently and avoiding unnecessary barriers to entry that will delay the development of the generation capacity in the MISO region." Order Denying 2023 Queue Cap Proposal, 186 F.E.R.C. ¶ 61,054 at P 182. Lacking that balance, the queue cap accepted in the January 30 Order is unjust and unreasonable. *See* 16 U.S.C. § 824d(a).

### A.     Without a State Exemption, the 2024 Queue Cap Proposal does not Strike the Appropriate Balance Contrary to FERC Precedent.

MISO's queue cap must limit the number of speculative projects in the queue—because it is the withdrawal of speculative projects from the interconnection

queue that then requires MISO to serially restudy the system. *See* January 30 Order

P 56. And, with each restudy, the network upgrade costs for the remaining queue

requests increase, which drives more interconnection requests to be withdrawn,

which drives further restudies. FERC relied on MISO's representation that the 2024

Queue Cap Proposal was about addressing the quantity and quality of

interconnection requests in the queue, "calculated in a way that strikes an appropriate

balance between limiting the volume of requests to a level that can be processed

efficiently and avoiding unnecessary barriers to entry that will delay the

development of the generation capacity in the MISO region." January 30 Order PP

56-57, citing Order Denying 2023 Queue Cap Proposal, 186 F.E.R.C. ¶ 61,054 at P

182. FERC's reliance on MISO's representations, without considering Petitioners'

assertions to the contrary, was a failure to carefully review the record evidence,

which suggests that its decision is contradicted by the record. *MCR Oil Tools*, 110

F.4th at 698.

Petitioners explained that the queue cap could limit or eliminate resources

needed to ensure resource adequacy like dispatchable resources with reliable fuel

supplies – *e.g.,* gas and nuclear. Petitioners' Protest, R.33:9. FERC disregarded

Petitioners' resource adequacy argument, instead finding that resource adequacy

forecasts by MISO were sufficient based on MISO's review of future planning

scenarios. January 30 Order P 60. But Petitioners, through regulation of their

utilities, are ultimately responsible to retail customers for resource adequacy, not MISO. MPSC Response, R.48:3. States manage resource adequacy risk through need-based state permitting determinations and approved resource plans – FERC is not a national resource adequacy planner. Petitioners' Request for Rehearing, R.53:10. Petitioners identified that MISO itself is concerned that it faces a hyper complex risk environment for reliability because of fleet changes, regulatory changes, fuel assurances, extreme weather events, load additions, incremental load growth, supply chain issues, and permitting issues. MPSC Response, R.48:3. And, MISO had identified the need for short-term generator interconnection that would handle urgent resource adequacy needs for the MISO states. MPSC Response, R.48:4.

FERC relied on MISO's assertions that the queue cap strikes a balance between limiting the volume of requests and not creating unnecessary barriers to entry that will delay generator capacity. January 30 Order P 58. FERC did not respond to Petitioners' arguments that a queue cap without a state exemption would harm resource adequacy, and as a result, creates unnecessary barriers to generation development. Because FERC did not inquire into this relevant fact, its decision was unjust and unreasonable. *Scenic Hudson Pres. Conf.*, 354 F.2d at 620 (citing *Mich. Consol. Gas Co.*, 283 F.2d at 224, 226); *see also MCR Oil Tools*, 110 F.4th at 698.

**B.     FERC's Failure to Consider MISO's Testimony as To The Need for State Exemptions Undermines the Just and Reasonableness of the 2024 Queue Cap.**

In the 2023 Queue Cap Proposal, MISO Witness Andrew Witmeier testified that a state exemption makes a queue cap just and reasonable, including that a state exemption was necessary to comply with Cooperative Federalism principles and provide more realistic study results. Petitioners' Protest, R.33:11-12. But in the 2024 Queue Cap Proposal, Witness Witmeier reversed course by testifying that the queue cap is just and reasonable without a state exemption, without explanation. 2024 Queue Cap Proposal at Tab A, R.1:29, 32.  The witness failed to explain why the concerns raised previously (in his testimony in the 2023 Queue Cap Proposal) about the state exemption's importance in ensuring just and reasonable rates were no longer relevant. 2024 Queue Cap Proposal at Tab A, R.1:29. FERC's only response to this assertion is that Witness Witmeier's testimony is not dispositive, as FERC based the decision on the entire record; and that he did not make an explicit statement in his 2023 testimony that a state exemption was "necessary" to make MISO's proposal just and reasonable. Further Consideration Order P 35. But in 2023 Witness Witmeier testified that the 2023 Queue Cap Proposal, including the state exemption, was just and reasonable. Petitioners' Protest, R.33:11-12. Neither of these responses avoid a conclusion that FERC's decision was arbitrary and lacked reasoned decision-making.

28

MISO's 2024 Queue Cap Proposal marked a significant shift from its 2023 approach. MISO justified the inclusion of the state exemption as a necessary acknowledgment of states' resource adequacy responsibilities and principles of cooperative federalism. In the 2023 Queue Cap Proposal, the state exemption was not unduly discriminatory because states "are responsible for the resource adequacy requirements of their customers" and the exemption "will allow a [state] to request that such a proposed Generating Facility be exempt from the cap." Petitioners' Protest, R.33:11-12. MISO explained that the exemption "recognizes certain unique responsibilities that the states, through their retail utility regulators and other similar entities, have with respect to resource adequacy" consistent with "principles of cooperative federalism, which are reflected in the proposed [state] exemption." Petitioners' Protest, R.33:11-12. In a dissent to the Order Denying the 2023 Queue Cap Proposal, Commissioner Christie agreed that including the state exemption was not unjust, unreasonable, or unduly preferential. *Midcontinent Indep. Sys. Operator*, 186 F.E.R.C. ¶ 61,054 at PP 9-10 (Jan. 19, 2024) (Christie, C., concurring in part and dissenting in part).

A recent Fifth Circuit decision underscores that when an agency's reasoning is thin and its review of the record incomplete, its actions risk being struck down as arbitrary and capricious. In *MCR Oil Tools,* the Fifth Circuit Court of Appeals determined the Pipeline and Hazardous Materials Safety Administration's

("PHMSA" or the "agency") findings of fact were arbitrary and capricious. 110 F.4th at 683. First, the agency relied only on a single record citation from a declaration, which is insufficient to be a rational basis for the agency's decision. *Id.* Second, there was no explanation as to how or why the agency formed their deciding rationale. *Id.* Failure to make a rational connection between the facts found and the choice made is arbitrary and capricious. *Id.* Second, the agency failed to carefully review the record evidence which suggests its decision was contradicted by the record. *Id.* at 698. The agency failed to reference relevant lab reports, including its own report. *Id.* An agency does not get to "bury its head in the sand" and ignore what evidence it did not want to consider. *Id.*

Like *MCR Oil,* FERC relied on limited testimony from a single source, failed to offer a rationale for its decision to disregard the previous testimony, and failed to review or address any inconsistencies and contradictions between its decision and the record evidence.

### C.    The Approved ERAS Process Confirms Petitioners' Assertions about the Queue Cap.

As expected, MISO's proposed ERAS approach does not address the resource adequacy concerns raised by the 2024 Queue Cap Proposal without the state exemption. MISO used the promise of a then inferior, incomplete ERAS process to interconnect state resource adequacy generators to justify omission of the state

exemption in its 2024 Queue Cap Proposal. 2024 Queue Cap Proposal, R.1:439. MISO explained that the ERAS proposal would address the need for states to interconnect resource adequacy projects. In the January 30 Order, FERC explained it would not rely on the ERAS proposal to approve the exemptions proposal, but it did not address Petitioners' concerns that an ERAS process would not include the necessary protections for states. Since FERC's approval, MISO has offered and received approval for a separate ERAS process. *Midcontinent Indep. Sys. Operator, Inc.*, 192 F.E.R.C. ¶ 61,064 (July 21, 2025). Unlike the approved 2024 Queue Cap Proposal, which runs until MISO files a new tariff change, the current ERAS process is time limited to 2027 or sixty-eight projects, whichever comes sooner. *Id.* at P 17. January 30 Order P 37.

FERC acknowledges that the accepted ERAS process, which provides a limited short-term remedy, does not solve the long-term resource adequacy problems faced by the states. *Midcontinent Indep. Sys. Operator*, 192 F.E.R.C. at P 83. As Petitioners warned, the states' relief under ERAS is limited in time and quantity but MISO's queue cap has no end date. ERAS does not remedy the roadblock of the states' resource adequacy needs and authority.

**III.    Because MISO Failed to Distinguish the State Exemption from the Other Exemptions Proposals, the Exemptions are Unduly Discriminatory and Preferential.**

In addition to the requirement that rates be just and reasonable, the FPA provides that "No public utility shall, with respect to any transmission or sale subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service." 16 U.S.C. § 824d(b). FERC erred by not concluding that MISO's proposal unduly discriminates against the state exemption that meets the same criteria as the three exemptions FERC accepted.

FERC accepted three exemptions to the 2024 Queue Cap Proposal. Those are (1) an increase in the generating facility capacity of a replacement generating facility, (2) a conversion from a less complex interconnection service to a more complex one (ERIS-NRIS) and (3) a generating facility with a Provisional Generator Interconnection Agreement. January 30 Order P 71. FERC accepted these exemptions and focused its order on identifying the differences between the exemptions proposed in the 2023 Queue Cap Proposal and the current proposal. Specifically, FERC found that subjecting the exemptions to the overall queue cap addressed the main concern that exemptions to the cap would be unjust and

unreasonable because they were unlimited. January 30 Order P 87. From FERC's perspective, the exemptions proposal read together with the entire 2024 Queue Cap Proposal, would not frustrate the purpose of a queue cap. January 30 Order P 86. FERC identified that each exemption had either a higher degree of commercial readiness or had inherent practical limitations on its use. January 30 Order PP 88-90. These exemptions meet two criteria—the interconnection requests are "quality" requests, in that they are likely to be built, and the interconnection requests are low in "quantity," in that they will not frustrate the purpose of the queue cap by overtaking the normal interconnection process.

As Petitioners demonstrated through the sum of their three filings before the Commission, the state exemption meets all the above criteria accepted by FERC for the exemptions—that is, state exemptions are low in quantity and high in quality. The number of resource adequacy projects in the queue compared to MISO's current total queue currently is negligible; state exemption requests would likely increase the number of queue filings by only 1.1%. MPSC Response, R.48:9.

First, Petitioners explained that the state exemption, like the other exemptions, would not frustrate the purpose of the queue cap, because, like the other exemptions, the state exemption could be limited to the total cap. MPSC Response, R.48:9.

Second, because of the importance of these projects to resource adequacy, and their approval by states through resource plans and state need-based permitting

determinations, state projects are more likely to be built than generation subject to the other exemptions. There are several factors Petitioners raised that demonstrate this. Because the projects are necessary, they do not drop out of the queue for variations in interconnection costs. Petitioners' Protest, R.33:10-11. And, projects necessary for resource adequacy are "rate-based." That means their costs are recovered in retail rates paid directly by retail consumers because they are necessary for the reliable function of the electric grid. Petitioners' Protest, R.33:10-11. Cost recovery is not tied to the need for third party financing or revenue from the sale of energy in wholesale markets.

MISO attempted to distinguish the state exemption from other exemptions by claiming that state exemptions are driven by "public need" for a resource, not "certainty" that a resource will be built. MISO Answer, R.46:4. That argument is illogical. If a state determines that a project is *needed* to ensure adequate reliable service, that project is more likely to be built than a project that is *not* necessary to maintain service; it is more certain, not less. FERC did not acknowledge or consider this distinction in its order. There is no material difference between the reasons for accepting the exemptions proposed by MISO and the qualities of resources that would be subject to the state exemption. FERC's acceptance of other exemptions, without the state exemption, unduly prefers those resources over resources that could be subject to a state exemption. FERC either did not investigate that fact or

34

concluded incorrectly. FERC's acceptance of the exemptions was arbitrary, unduly discriminatory, and preferential.

## IV.    CONCLUSION

Petitioners Mississippi Public Service Commission and Louisiana Public Service Commission respectfully request that the Court remand the orders under review for consideration of a state exemption in the 2024 Queue Cap Proposal or, in the alternative, reverse.

Respectfully submitted,

*/s/ William D. Booth*
William D. Booth
Orrie A. Walsvik
MICHAEL BEST & FRIEDRICH LLP
1000 Maine Avenue SW, Ste. 400
Washington, DC 20024
*Counsel for Mississippi Public Service Commission*

*/s /Noel J. Darce*
Noel J. Darce
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Ste. 3150
New Orleans, LA 70112
*Counsel for Louisiana Public Service Commission*

## V.    <u>CERTIFICATE OF SERVICE</u>

I certify that on the 11th day of September, 2025, the foregoing document was electronically filed with the Clerk of the Court using the electronic case filing system of the Court, and that a true and correct copy was served on the following lead counsel for all parties listed below via electronic service:

| <u>Respondent:</u> | <u>Counsel for Respondent:</u> |
|---|---|
| Federal Energy Regulatory Commission | Hon. Robert Solomon, Solicitor<br>Federal Energy Regulatory Commission<br>888 First Street, N.E.<br>Washington, DC 20426<br>robert.solomon@ferc.gov<br><br>Angela Gao<br>Federal Energy Regulatory Commission<br>888 First Street, N.E.<br>Washington, DC 20426<br>angela.gao@ferc.gov |

| <u>Intervenor:</u> | <u>Counsel for Intervenor:</u> |
|---|---|
| Midcontinent Independent System Operator, Inc. | Madison Pitts<br>Midcontinent Independent System Operator, Inc.<br>100 Centerview Drive<br>Little Rock, AR 72211<br>mpitts@misoenergy.org;<br>misolegal@misoenergy.org |

36

I certify that on the 11th day of September, 2025, and that a true and correct copy of the foregoing document was served on the following non-e-filing party via first-class mail:

Federal Energy Regulatory
Commission *(cont'd)*

Debbie-Anne Reese
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, DC 20426
debbie-anne.reese@ferc.gov

/s/ *William D. Booth*
William D. Booth
*Attorney for Petitioner Mississippi
Public Service Commission*

## VI.  CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 8127 words.

2.      This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word 2025 in 14-point font Times New Roman style.

*/s/ William D. Booth*
William D. Booth
*Attorney for Petitioner Mississippi*
*Public Service Commission*

*Dated:  August 25, 2025*